IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES JOSEPH JULUKE, JR § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| V. § | No. 3:21-cv-2900-E | |
| § | | |
| SUNNYLAND PROPERTIES LTD § | | |
| AND GATOR SPRING VALLEY § | | |
| PARTNERS LLLP, § | | |
| § | | |
| Defendant. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

United States District Judge Ada Brown has referred two motions, which were filed the same day, to the undersigned United States Magistrate Judge for findings, conclusions, and recommendation, *see* Dkt. No. 99.

Defendant Gator Spring Valley Partners LLLP has filed a motion to dismiss for lack of jurisdiction. *See* Dkt. No. 88. Plaintiff James Joseph Juluke, Jr. has filed a response, *see* Dkt. No. 91, and Gator has filed a reply, *see* Dkt. No. 97.

Plaintiff Juluke has filed an amended motion for summary judgment. *See* Dkt. No. 89. Gator has filed a response, *see* Dkt. No. 93-1, and Juluke has filed a reply, *see* Dkt. No. 96.

For the following reasons, as explained below, the Court should grant the motion to dismiss for lack of subject matter jurisdiction and dismiss the motion for summary judgment.

## Background

James Joseph Juluke, Jr., who is a disabled and uses a wheelchair, sued Gator Spring Valley Partners LLP and Sunnyland Properties, Ltd, to compel them to bring commercial property they own, lease or operate into compliance with Title III of the Americans with Disabilities Act ("ADA"). *See* Dkt. No. 17 (First Amended Complaint); 42 U.S.C. §§ 12181-12189 (ADA). Juluke later dismissed his claims against Sunnyland, *see* Dkt. No. 29, leaving Gator as the only defendant.

In his First Amended Complaint, Juluke complains about six barriers on the Gator Property that he observed or encountered during his visits to Spring Valley Crossing Shopping Center located in Dallas, Texas:

A. Plaintiff personally encountered/observed that several of the disabled use parking spaces near the El Rancho Supermercado have signage which is mounted too low (under 60 inches) where they are commonly obstructed by parked vehicles. This condition made it difficult for Plaintiff to identify the designated disabled parking areas.

B. Plaintiff personally encountered/observed that two (2) of the disabled use parking spaces near San Marcos Ice Cream have signage which is mounted too low (under 60 inches) where they are commonly obstructed by parked vehicles. This condition made it difficult for Plaintiff to identify the disabled parking areas.

C. Plaintiff personally encountered an inaccessible curb ramp serving suite 112 due to excessive running slopes over 1:12 and steep side flare slopes in excess of 1:10. These conditions made it more difficulty for Plaintiff to maneuver his wheelchair over this ramp and increased his risk of a fall.

D. Plaintiff personal encountered inaccessible curb ramp serving the disabled use parking spaces near San Marcos Ice Cream due to excessive running slopes over 1:12 and steep side flares in excess of 1:10. These conditions made it more difficulty for Plaintiff to maneuver his wheelchair over this ramp and increased his risk of a fall.

    E.    Plaintiff personally encountered an inaccessible curb ramp connecting the building including San Marcos Ice Cream (among others) with the public sidewalk and nearby bus stops on Coit Road due to excessive running slopes over 1:12 and steep side fare slopes in excess of 1:10. These conditions made it more difficult for Plaintiff to maneuver his wheelchair over the ramps and increased his risk of a fall.

    F.    Plaintiff personally encountered an inaccessible sidewalk route between Leslie's Pool Supplies and Ameritax due to running slopes in excess of 1:20 and a rise of over six (6) inches, but a failure to provide handrails. This condition made it more difficult for Plaintiff to maneuver his wheelchair over the sidewalk ramp and increased his risk of a fall.

*Id.* at 6-8 of 11.

Juluke's claims are based solely on the allegedly non-conforming structures. *See id.* at ¶¶ 11-19. He does not allege that Gator engaged in discriminatory conduct. He seeks a declaration that the property owned, leased, and/or operated by Gator is not ADA compliant and an order directing Gator to bring the property into compliance with the requirements of Title III of the ADA. *See id.* at 9-10 of 11.

During discovery, Juluke produced an expert report and supplemental expert report that identified 15 "items" as purported ADA violations at the property. He did not amend his complaint to add additional violations that were not included in the First Amended Complaint.

After the lawsuit was filed, Gator voluntarily hired a contractor to address, remediate, or remove the six alleged structural barrier violations that Juluke identified in his original and amended complaints.

Gator moves to dismiss the case for lack of subject matter jurisdiction,

alleging that there is no longer a case or controversy between the parties. *See* Dkt. No. 88.

Gator argues that, first, as a threshold matter, Juluke may only rely on allegations of barriers to access asserted in a properly pleaded complaint and that he cannot rely on unpled allegations of alleged violations. Gator contends that any unpled claims asserted by Juluke as ADA violations, including those in the report and supplement of Juluke's expert, cannot support jurisdiction because they were not plead in the First Amended Complaint as required by Federal Rule of Civil Procedure 8.

Second, Gator argues that Juluke's claims in the First Amended Complaint, to the extent that they were based on his enjoyment of the San Marcos Ice Cream store, are now moot because that store has been permanently closed.

And, third, Gator argues that an ADA claim based on structural barriers in a properly pleaded complaint becomes moot if a defendant removes or remedies those barriers before the case reaches final judgment. Gator contends that Juluke's case is now moot because Gator has addressed, removed, or remediated the alleged barriers identified in Juluke's live pleading.

Juluke filed a response contending that he may recover for all ADA violations identified by his experts or during discovery, in addition to those alleged in his live pleading. Juluke does not differentiate between the pled and unpled barriers.

## Legal Standards

"Federal courts are courts of limited jurisdiction, and absent jurisdiction

conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The Court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

The Court must dismiss a complaint for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (cleaned up). The Court will not assume it has jurisdiction. Rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" in any case originally filed in federal court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted). The plaintiff must demonstrate standing for each claim and form of relief sought. *See DaimlerChrysler Corp. v. Duno,* 547 U.S. 332, 352 (2006) (noting that

"our standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press" and that "[w]e have insisted ... that a plaintiff must demonstrate standing separately for each form of relief sought" (cleaned up)).

The United States Court of Appeals for the Fifth Circuit recognizes a distinction between a "facial" attack to subject matter jurisdiction, which is based only on the pleadings, and a "factual" attack to jurisdiction, which is based on affidavits, testimony, and other evidentiary material. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *accord Ramming*, 281 F.3d at 161 ("Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). Regardless of the nature of the attack, the plaintiff seeking a federal forum "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161.

Where, as here, a defendant files a Rule 12(b)(1) motion to dismiss, the attack is presumptively facial, and the Court need look only to the sufficiency of the allegations of plaintiff's complaint, or on the complaint as supplemented by undisputed facts, all of which are presumed to be true. *See Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1989); *Paterson*, 644 F.2d at 523.

But, on a factual attack, the Court "is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161, and, to oppose the Rule

12(b)(1) motion, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction," *Paterson*, 644 F.2d at 523. "When considering Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the district court must give the plaintiff an opportunity to be heard, particularly when disputed factual issues are important to the motion's outcome. In some cases, an oral hearing may be indispensable due to the complicated factual disputes underlying the case." *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 319 (5th Cir. 2012) (footnotes omitted). But "an oral hearing is not always necessary if the parties receive an adequate opportunity to conduct discovery and otherwise present their arguments and evidence to the court." *Id.* at 319-20 (footnote omitted).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* (citations omitted).

"The existence of subject matter jurisdiction is determined at the time of removal." *In re Bissonnet Inv. LLC*, 320 F.3d 520, 525 (5th Cir. 2023). To make this determination, the Court considers the claims in the state court petition as they

-7-

existed at the time of removal. *See Juanopulos v. Salus Claims Mgmt. LLC*, 518 F. Supp. 3d 973, 975 (S.D. Tex. 2021) (citing *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002)).

"As a general rule, standing must exist at the time an action is filed," *Guajardo v. Air Exp. Int'l, USA, Inc.*, No. 3:12-cv-815-L, 2012 WL 2886672, at *2 (N.D. Tex. July 16, 2012), or, in a removed case, "at the time of removal," *Buras v. Hill*, No. 4:22-CV-753-SDJ, 2023 WL 4234393, at *1 (E.D. Tex. June 28, 2023). And, "[a]t its core, ripeness is a matter of timing that serves to prevent courts from entangling themselves in cases prematurely." *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 312 (5th Cir. 2021); *accord Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) ("A case or controversy must be ripe for decision, meaning that it must not be premature or speculative. That is, ripeness is a constitutional prerequisite to the exercise of jurisdiction." (cleaned up)).

"[B]ut Article III demands that an 'actual controversy' persist throughout all stages of litigation." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). And, so, "[t]he mootness doctrine … considers whether the present or threatened injury required for standing continues to exist." *Consumer Data Indus. Ass'n v. Tex. through Paxton*, No. 21-51038, 2023 WL 4744918, at *3 n.6 (5th Cir. July 25, 2023) (cleaned up; citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189-94 (2000)).

**Analysis**

I. <u>The Motion to Dismiss should be granted.</u>

A.     <u>Recovery is limited to barriers alleged in the First Amended Complaint.</u>

Federal Rule of Civil Procedure "8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). "The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds on which it rests." *Id.*

"'For purposes of Rule 8, a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint.'" *Kelly v. Smith's Food & Drug Centers, Inc.*, 793 F. App'x 787, 790 (10th Cir. 2019) (quoting *Oliver v. Ralphs Grocery Co.,* 654 F.3d 903, 909 (9th Cir. 2011)). "[A] defendant is not deemed to have fair notice of barriers identified elsewhere." *Oliver*, 654 F.3d at 909. That includes barriers identified for the first time in an expert report. *See id.* Otherwise, the defendant would have to guess which of the items identified elsewhere were grounds for the plaintiff's complaint. *See id.*

It appears that the United States Court of Appeals for the Fifth Circuit has not addressed this issue. And, although Juluke criticizes Gator's use of foreign authority, he has not cited any Fifth Circuit or other authority holding to the contrary.

Instead, Juluke cites cases addressing his standing to file the lawsuit. But his standing to file suit is not challenged. And it is irrelevant to the issues presented here – what barriers were alleged in the complaint, and thus before the Court, and whether they were remediated.

Juluke also argues that he alleged in his First Amended Complaint that he has visited, shopped at, and enjoys six named business located at the Property, "among others." And he alleged that "there are other current violations of the ADA and the ADA Accessibility Guidelines ('ADAAG') at the Property." *Id.* at ¶ 20. These allegations are too vague to meet Rule 8's notice requirement.

And, so, only the barrier violations alleged in the First Amended Complaint are before the Court, and the Court must disregard all other alleged barrier violations.

B. <u>The claims alleged in the First Amended Complaint are moot.</u>

Title III of the ADA proscribes discrimination in places of public accommodation against persons with disabilities. *See* 42 U.S.C. § 12182(a). Discrimination includes "a failure to remove architectural barriers … that are structural in nature, in existing facilities … where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv)).

Gator contends that it has addressed, remediated, or removed the architectural barriers alleged in the First Amended Complaint, and, as a result, the Court can no longer give Juluke meaningful relief, making Juluke's claims moot.

1. <u>Mootness</u>

"As a general rule, standing must exist at the time an action is filed," *Guajardo v. Air Exp. Int'l, USA, Inc.*, No. 3:12-cv-815-L, 2012 WL 2886672, at *2 (N.D. Tex. July 16, 2012), or, in a removed case, "at the time of removal," *Buras v. Hill*, No. 4:22-CV-753-SDJ, 2023 WL 4234393, at *1 (E.D. Tex. June 28, 2023). And,

-10-

"[a]t its core, ripeness is a matter of timing that serves to prevent courts from entangling themselves in cases prematurely." *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 312 (5th Cir. 2021); *accord Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) ("A case or controversy must be ripe for decision, meaning that it must not be premature or speculative. That is, ripeness is a constitutional prerequisite to the exercise of jurisdiction." (cleaned up)).

"[B]ut Article III demands that an 'actual controversy' persist throughout all stages of litigation." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). And, so, "[t]he mootness doctrine … considers whether the present or threatened injury required for standing continues to exist." *Consumer Data Indus. Ass'n v. Tex. through Paxton*, No. 21-51038, 2023 WL 4744918, at *3 n.6 (5th Cir. July 25, 2023) (cleaned up; citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189-94 (2000)).

"The mootness doctrine is particularly applicable to structural modifications, which are unlikely to be altered in the future. In such cases, after expending significant sums to achieve compliance, the suggestion that Defendant might revert to non-compliance is illogical, however, because doing so would actually cost Defendant more than maintaining compliance." *Smith v. Alsid*, No. 3:21-CV-111-SA-RP, 2022 WL 9496386, at *4 (N.D. Miss. Oct. 14, 2022)

    2.    <u>Claims regarding closed business are moot.</u>

Three of the alleged barriers identified in the First Amended Complaint concern parking and curb ramps near San Marcos Ice Cream. *See* Dkt. No. 17 at 6-8

-11-

of 11. Gator argues that those claims have become moot because San Marcos Ice Cream was subsequently closed.

Because Title III of the ADA limits a plaintiff to injunctive relief, an ADA plaintiff must demonstrate "a real and immediate threat of repeated injury." *Deutsch v. Annis Enters., Inc.* 882 F.3d 169, 173 (5th Cir. 2018); 42 U.S.C. § 12188(a)(2). But the threat of future injury dissipates and claims for prospective injunctive relief under the ADA become moot once the place of public accommodation has ceased operation. *See Kohler v. Southland Foods, Inc.*, 459 F. App'x 617, 618 (9th Cir. 2011) (holding ADA claim became moot when restaurant ceased operation); *Whitaker v. Le Marais Bakery, LLC,* No. 21-cv-06590-TSH, 2022 WL 827643, at *3 (N.D. Cal. Mar. 18, 2022) (holding ADA claim became moot when bakery closed).

In his response, Juluke acknowledges that San Marcos Ice Cream is now closed and states that it has been replaced with another ice cream store. *See* Dkt. No. 91 at 28 of 30. Although he states in a supporting affidavit that he plans to try the new ice cream store once it opens, *see* Dkt. No. 92 at ¶ 11, he failed to amend his complaint to substitute the new ice cream store for San Marcos Ice Cream.

Thus, the closure of San Marcos Ice Cream renders Juluke's claims concerning alleged barriers near San Marcos Ice Cream moot.

   3. <u>Gator's voluntary barrier removal renders Juluke's claims moot.</u>

Gator contends that the case is moot because Gator has removed the alleged barriers identified in the First Amended Complaint.

Juluke concedes that the parking sign height violations identified in the First

Amended Complaint have been permanently repaired and are substantially compliant with ADA standards, *see* Dkt. No. 19 at 17-18 of 30, and so the undersigned will not address them.

"Because a private plaintiff can sue only … for removal of a barrier under the ADA, a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claims." *Breeze v. Kabila, Inc.*, 575 F. Supp. 3d 141, 151-52 (D.D.C. 2021) (quoting *Oliver*, 654 F.3d at 905). Not every "voluntary removal of alleged barriers" has this effect; rather, only structural or permanent changes to a facility are generally sufficient to satisfy defendant's "formidable" burden of showing that the violations could not reasonably be expected to recur. *Id.*

According to the Fifth Circuit, "voluntary cessation may render a case moot if the defendant demonstrates that there is no reasonable expectation that the alleged violation will recur, and that interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Fantasy Ranch Inc. v. City of Arlington, Tex.,* 459 F.3d 546, 564 (5th Cir. 2006) (cleaned up).

"ADA-architectural-barrier cases are a unique subset of voluntary-cessation-doctrine-cases" because the alleged discrimination cannot reasonably be expected to recur since structural modifications permanently undo the offending conduct. *Houston v. 7-Eleven, Inc.*, No. 13-60004, 2014 WL 351970, at *2 (S.D. Fla. Jan. 31, 2014); *see also Kallen v. J.R. Eight, Inc.*, 775 F. Supp. 2d 1374, 1379 (S.D. Fla. 2011) ("It is untenable for Plaintiff to suggest that once the renovations are completed they could be undone.").

Here, Juluke retained expert Patrick Sullivan with Access Atelier LLC to inspect the Gator Property and to identify architectural barriers and property conditions that did not meet the technical specifications of the ADA Standards for Accessible Design. *See* Dkt. No. 89-2, App. at 14 (Patrick A. Sullivan's Expert Report dated June 28, 2022). Sullivan identified fifteen items that he concluded did not comply with the ADA and ADAAG. In his opinion, Sullivan determined that Gator could make modifications to the property to remove, repair, and/or cure all the architectural barriers identified in his report.

Gator objects to Sullivan's preliminary report dated June 28, 2022 and an updated report dated May 4, 2023, as not relevant and improper to the extent that they attempt to add claims and contentions not stated in the First Amended Complaint. The undersigned agrees that the Court should limit its review to the six alleged barriers. And, because Sullivan fails to identity which of the 15 items addressed in his report correlated to the six alleged barriers in the live pleading, the Court cannot ascertain the extent to which Sullivan's reports address the pleaded barriers.

After the lawsuit was filed, Gator took measures to voluntarily repair or remove the barriers. Megan Panek is Gator's property manager at the shopping center. *See* Dkt. No. 88-1 at 99-131 of 163 (Panek Deposition). After Gator received Sullivan's June 22, 2022 preliminary report, she was instructed to get a second opinion with an additional estimate for the scope of the work covered by the report.

Panek retained Frankie Doyle of Doyle Property Services, LLC for an additional estimate. She provided Sullivan's expert report to Doyle and walked the Gator Property with him.

Panek then retained Doyle to perform the remediation work. Although the description of the scope of the work on Doyle's invoice is "to address and correct items A, B, C, D, E and F" in the expert's preliminary report, the descriptions of the work done correspond to the six violations alleged in the First Amended Complaint. *See id.* at 154 of 163. Also, the expert's report identifies the fifteen violations by number, not letter.

> The work to be performed by Doyle was to:
>
> -Reposition 2 lower signs to acceptable height
> -Cut and Remove concrete sidewalk 45X8 for new proper slop elevations
> -Adjust slopes to accessible curb ramp to proper slope
> -Cut and Remove 3 concrete pads 15X6
> -Repaint sidewalk street access walkway (yellow)
> -Repaint affected sidewalk curb (red)

*Id.*

Panek walked the Gator Property with Doyle during construction demolition and again when the work was completed. Panek testified that Doyle addressed and completed the work on alleged barriers C, D, and E, and that Doyle determined there was no issue with alleged barrier F. Gator paid Doyle $31,000 for the work.

Juluke contends either that all fifteen items identified in Sullivan's reports were not addressed or were not repaired correctly. But, again, because there is no correlation between the six barriers alleged in the First Amended Complaint and the

fifteen items identified by Sullivan, there is no evidence that Doyle's repairs did not bring the six alleged violations into substantial compliance with the ADA.

After spending $31,000 to remove the alleged barriers, there is no reasonable expectation that the barriers alleged in the First Amended Complaint will recur. Because Juluke is only suing for injunctive relief, Gator's' voluntary compliance with the ADA prior to trial moots the case. *See Oliver*, 654 F.3d at 905.

II.  <u>The motion for summary judgment should be dismissed.</u>

The motion for summary judgment should be dismissed because the Court no longer has subject matter jurisdiction.

## Recommendation

The Court should grant Defendant Gator Spring Valley Partners LLLP's Motion to Dismiss for Lack of Jurisdiction [Dkt. No. 88] and dismiss Plaintiff James Joseph Juluke, Jr.'s Amended Motion for Summary Judgment [Dkt. No. 89].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that

merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 2, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE